**FILED**

**Jun 22, 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Kevin Reed CDCR#AN4611

Name and Prisoner/Booking Number

CHCF - Stockton

Place of Confinement

7707 S. Austin Rd., P.O. Box 213040

Mailing Address

Stockton, Ca.  95213-213040

City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Kevin Reed

(Full Name of Plaintiff)          Plaintiff,

v.

CASE NO.  2:23-cv-1207 CKD (PC)

(To be supplied by the Clerk)

(1) Gavin Newsom

(Full Name of Defendant)

(2) Kathleen Allison

(3) Gena Jones

(4) J. Schultz

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☒ Other: 28 U.S.C. 2201, 2202, 2nd The American with Disability Act 42 U.S.C. 12101, 12102, 12132, 2nd 12203 et esq.("ADA").ARP, Armstrong

2. Institution/city where violation occurred: California Department of Corrections and Rehabilitation/California Corrections Health Care Services Institutions, CHCF-Stockton and CSP-Lancaster.

K. Petersen
G. Stacy
T. Hernandez
C. Mohadjer
S. Richardson
N. Castillo
J. Kuykendall
L. Bucsit
C. Detrick
M. Ureste
A. Lai
H. Davis
S. Awatani
A. Chapman
Dr. Romos
Dr. Joffe
M. Mijangos
C. Renner
A. Ojeda
L. Fernandez
A. Frazier
J. Gonzalez
K. Gridler
R. Tino
B. Stout

Defendant(s) Continued: Page

1    (5) A. Adams

2    (6) M. Soleimani

3    (7) G. Galstain

4    (8) G. Williams

5    (9) A. Farhat

6    (10) K. Petersen

7    (11) G. Stacy

8    (12) T. Hernandez

9    (13) G. Mohadjer

10    (14) S. Richardson

11    (15) N. Castillo

12    (16) J. Kuykendall

13    (17) L. Bucsit

14    (18) C. Detrick

15    (19) M. Ureste

16    (20) A. Chavez

17    (21) A. LAI

18    (22) H. Davis

19    (23) S. Awatani

20    (24) A. Chapman

21    (25) Dr. Ramos

22    (26) Dr. Joffe
       (27) M. Mijangos

23    (28) C. Renner
       (29) A. Ojeda

24    (30) L. Fernandez
       (31) A. Frazier

25    (32) J. Gonzalez

26    (33) K. Gridler
       (34) R. Tino

27    (35) B. Stout

28

## B. DEFENDANTS

1. Name of first Defendant: Gavin Newsom ___. The first Defendant is employed as:
   Governor ___ at CDCR ___.
   (Position and Title)                    (Institution)

2. Name of second Defendant: Kathleen Allison ___. The second Defendant is employed as:
   Secretary ___ at CDCR ___.
   (Position and Title)                    (Institution)

3. Name of third Defendant: Gena Jones ___. The third Defendant is employed as:
   Warden ___ at CDCR-Stockton ___.
   (Position and Title)                    (Institution)

4. Name of fourth Defendant: J. Schultz ___. The fourth Defendant is employed as:
   Chief Deputy Warden ___ at CDCR-Stockton ___.
   (Position and Title)                    (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?     ☒ Yes     ☐ No

2. If yes, how many lawsuits have you filed?  1 . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: Kevin Reed ___ v. CDCR, et al. ___
      2. Court and case number: 2:19-cv-0275-AC-P ___
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Yes still pending ___

   b. Second prior lawsuit:
      1. Parties: ___ v. ___
      2. Court and case number: ___
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) ___

   c. Third prior lawsuit:
      1. Parties: ___ v. ___
      2. Court and case number: ___
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) ___

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

B. DEFENDANTS CONTINUED: PAGE

5.  Name of Fifth Defendant: A. Adams, Chief Medical Executive-CHCF-Stockton.

6.  Name of Sixth Defendant: M. Soleimani, Chief Medical Executive-CSP-Lancaster.

7.  Name of Seventh Defendant:  C. Galstain, Chief Medical Executive-CSP-Lancaster.

8.  Name of Eighth Defendant: G. Williams, Physician and Surgeon-CHCF-Stockton.

9.  Name of Ninth Defendant:  A. Farhat, Medical Doctor-CHCF-Stockton.

10. Name of Tenth Defendant:  K. Petersen, ADA Coordinator-CHCF-Stockton.

11. Name of Eleventh defendant: A.Chapman,ADA Coordinator-CSP-Lancaster.

12. Name of Twelfth defendant: Dr.Ramos,Chief Physican and Surgeon-CSP-Lancaster

13. Name of Tirteenth defendant:Dr.Joffe,Senior Psychologist-CSP-Lancaster

14. Name of Fourteenth defendant:M.Mijangos,SSA Health Care Grievances,-CSP-Lancaster

15. Namee of Fifteenth Defendant: C. Renner, AGPA Health Care Grievances-CSP-Lancaster

16. Name of Sixteenth Defendant: A. Ojeda, CCII Inmate Appeals-CSP-Lancaster

17. Name of Seventeenth Defendant: L. Fernandez, Health Care Compliance Ananlyst-CSP-Lancaste

18. Name of Eighteenth Defendant: A. Frazier CCII CAMU-CSP-Lancaster

19. Name of Ninteenth Defendant: J. Gonzalez, DDP CCI-CSP-Lancaster

20. Name of Twentieth Defendant: K. Gridler, ADA OT-CSP-Lancaster

21. Name of Twenty-first Defendant: R. Tinio, CCI-CSP-Lancaster

22. Name of Twenty-second Defendant: B. Stout, Physician Assistant-CSP-Lancaster

23. Name of Twenty-third Defendant: Jane & John Does  23 - 500

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: American with Disabilities Act, 42 U.S.C. 12101, 12102, 12132, and 12203 et Seq.

2. **Claim I.** Identify the issue involved. Check **only one**. State additional issues in separate claims.

☐ Basic necessities    ☐ Mail    ☐ Access to the court    ☐ Medical care

☐ Disciplinary proceedings    ☐ Property    ☐ Exercise of religion    ☐ Retaliation

☐ Excessive force by an officer    ☐ Threat to safety    ☒ Other: Disability Discrimination

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

During 2022 through 2023, while in the Jurisdiction of the California Department of Corrections & Rehabilitation (CDCR Hereafter), California Health Care Services (CCHCS Hereafter), at California Health Care Facility Stockton (CHCF Hereafter), and CSP-Lancaster State Prison (LAC Hereafter); Plantiff Kevin Reed suffered from Stage 2 Decubitus (Pressure/Ulcer to his Left Testicle, and Deep Cuts to the back of his Thigh with pain, and suffering, and emotional stress, because he was denied his Amercian with Disabilities and Armstrong Accomodations Rights. Plantiff was placed in a Non-ADA cell/bunk bed, with No ADA Medical Mattress or Pressure reducing Air Mattress or Trapeze Bar, which casued Plantiff the Ulcer within 48 hours of his arrival to LAC, the direct design of the Bunk Bed with Side Panel Upright Lip which stopped, preventing the Mattress from Sliding off, caused Plantiff Cuts/Ulcers to the back of his thigh, transfering from wheelchair to bed, and or just simply sitting-up in bed with his feet to the floor with the upright panel pressing up against the back of Reed's thigh. Plantiff was intentionally deprived his Durable Medical Equipment (DME Hereafter), OHU-Housing Program and Services, and American with Disability Act (ADA) Armstrong Services, and Accommodations in Violation of the course of conduct. Under the continuing Doctoring Act of Disability Discrimination by the Defenders Gavin Newsom, Kathleen Allison, Gena Jones, J. Schultz, A. Adams, M. Soleimani, C. Gaslstain, G. Williams, A. Farhat, K. Petersen, G. Stacy, T. Hernandez, C. Hohader, S. Richardson, N. Castillo, J. Kuykendall, L. Bucsit, C. Detrick, M. Ureste, A. Chavez, A. Lai, H. Davis, and Does 1 - 20, are each being sued in their individual and official capacity.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

I suffered severe pressure sores to my Testicles and Legs, which I was Tortured for months mentally and physically deprived sleep, causing mental agnuish and disease.

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☒ Yes   ☐ No

   b. Did you submit a request for administrative relief on Claim I?    ☒ Yes   ☐ No

   c. Did you appeal your request for relief on Claim I to the highest level?    ☒ Yes   ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

CONTINUED CLAIM 1: SUPPORTING FACTS

capacity due to the clear establish laws violated in concert in conspiring together while acting as agents for the State of California.

On 04/11/2022, Plantiff Kevin Reed an ADA Paralegic was seen by his primary provider, Doctor Farhat, who told plantiff he had to discontinue his personal DME's: Medical Mattress, Trapeze Bar, Side Bed Safety Railings, which is all used to prevent falls and bed sores/ulcers. Dr. Farhat and his supervisor S. Awatani, Chief of Medical, on C-Yard knew that denying Reed his permanent OHU Services, he wouldn't be able to recieve his ADA/Medical Applicances. See Exhibit (A), where Farhat documented "Reed need OHU for DME's", which can't be issued in regular prison.

Dr. Farhat asked plantiff what's going on between him and nurse. Aungst went on to say these actions were beyond his control and went to get his supervisor S. Awatani, Chief of Medical over C-Yard. When Awatani arrived to explain to Reed why he was being kicked out of OHU and put up for transfer, her excuse was 'You can't just live here' and completely ignored Plantiff Reed when he said LAC sent me here because they can't accommodate me there and that they denied Reed the permanent Medical Mattress back that he gave them for the Air Mattress he arrived with to CHCF in 2018.

On 04/13/2022, Plantiff filed a CDCR Reasonable Accommodation Request form 1824 Log#16499762338, reporting there actions and requested to have his ADA Accommodations back or his ADA Medical Mattress back, the mattress he had when he arrived to CHCF. Staff at CHCF held a Reasonable Accommodation Panal Response meeting on 04/20/22, all staff deemed No Interim Accommodation Required on or about 04/28/2022. A Classification Committee was held by plantiff, Correctional Couselor M. Ureste, A. Chavez and Does 1-2. Committee was audited by Classification Staff Representative H. Davis, in his supervisory capacity, who completely ignored plantiff's records which stated he need a Trapeze Bar or Side Bed Railings, please See Exhibit (B), which will

1   show plaintiff's need of ADA Accommodations which was completely ignored by

2   Reciever of Records, H. Davis.  LAC medical staff would have never accepted

3   Reed, if they would have read his records regarding his High Risk serious ADA

4   needs.  The Receiver would have also known that LAC sent Reed to CHCF because

5   they couldn't accommodate Reed's ADA Accommodations because both parties failed

6   to do ther job correctly caused Reed's injury.

7        Reed arrived to LAC on or about 05/20/22, filed a Health Care Services

8   Form CDCR-7362, regarding having a Bed Sore/Ulcer to his testicles on or about

9   05/23/22.  Reed was seen by the LAC Physician Assistant, on or about 05/30/22;

10  at which time B. Stout, deemed    Reed's injury a Stage Two (2) Ulcer to his

11  left testical, which was caused by sitting in bed without a ADA Medical Mattress

12  or Side Railings on bed or Trapeze Bar, which is used for helping plantiff

13  rotate his body  every two (2) hours, to prevent Sores/Ulcers, which he is

14  prone to.

15  B. Stout, Physician Assistant, called over to  the Correctional Treatment Center

16  at LAC to get the plaintiff proper housing and adequate medical care, yet there

17  was no beds available.  P.A., B. Stout,    failed to find plaintiff any medical

18  bed in the State of California; sending Reed back to the same cell that caused

19  future injury.  Several days later Reed returned to see the same Physician Asst.

20  B. Stout, regarding the deep cuts like bed sores forming on the back of

21  plaintiff's thigh.  A second (2nd) order for a daily wound care was ordered for

22  Reed's left testicle and left thigh.  Staff once again failed to find Reed any

23  ADA Medical Bed in the State of California.  Please See Exhibit (C)

24       Plantiff was put up for transfer 72 hours after the first wound was

25  discovered, back to CHCF which took about two (2) months.  Reed was never

26  accommodated with a Trapeze Bar or a Medical Mattress or Safety/Side Bed

27  Railings, these actions and inactions caused emotional stress, pain and

28  suffering.  On 05/15/22, Reed filed a CDCR Health Care Grievance HC-602,

Log#22000052, stating I'm in a cell with No Table to eat on or write on or sit

my TV on; I almost fell several times; there is no ADA Medical Mattress and

there is No Trapeze Bar in my cell which was ordered by Dr. Farhat on or about

04/14/22.  Reed also stated in his CDCR HC-602, "His bed sits low, preventing

him from making a successful transfer;  and that I struggle to sit up because

there's no ADA Railing/Trapeze Bar to help me up, I have to use the top bunk

bunk to pull myself up onto my wheelchair.

Supervising Registered Nurse and Chief Executive Officer C. Galstain, Ph.D,

both violated California Department of Corrections and Rehabilitation Policy,

Partially Granting Plantiff Appeal; but still did nothing about Plantiff housing.

Reviewed on 06/22/22, and 06/30/22.  On or about 06/01/22, Plantiff filed

another ADA CDCR 1824 Reasonable Accommodation Request, Log#22-00387, stating

I can't allevate my feet, and I have blood clots in both my legs, with daily

swelling; and that there is No Trapeze Bar in my cell.  Staff should have been

well aware that I needed a Trapeze Bar or side Bed Railings on my bed and

known I needed to elevate my feet which was also impossible because of the

direct design of the cell which had a locker at the foot of the bed.  Plantiff

requested to be housed where he can have a Trapeze Bar or Side Safety Bed

Railings to prevent more falls and to be housed were he can elevate his feet

and a ADA Medical Pressure Reducing Air Mattress.  On 06/14/2022, a RAP meeting

was held by A. Chapman, ADA Coordinator, Dr. Ramos,  Chief Physician and

Surgeon, Dr. Joffe, Senior Psychologist, M. Mijangos, SSA Health Care Grievance

C. Renner, AGPA Health Care Grievances, A. Ojeda, CCII Inmate Appeals L.

Fernandez, Health Care Compliance Analyst, A. Frazier, CCII CAMU J. Gonzalez,

DDP CCI, K. Gridler, ADA OT, R. Tinio CCI, all deem No Interim Accommodations

required, and No Irreparable Harm.  On 07/14/2022, Plantiff appealed CSP-LAC

decision, Log#22001281, stating I filed two (2) separate CDCR 1824's, Log#B-22-

00387, explaining that I needed ADA Accommodations to prevent more bed sores and

1  and informing them I only gotten worse after being housed in a cell that did not

2  allow me to elevate my swollen legs, and properly rotate my body from side to

3  side; I could not have an Air Flowing Pressure Reducing Mattress that's

4  essential and necessary for the treatment of bed sores.  All non-disabled

5  inmates are able to safely participate in the activity required by all without

6  risk of injury, known as sleep.  The Disability Discrimination "Occurred when

7  both Health Care and Custody Staff failed to provide access to safely allow

8  plantiff to sleep.

9      On or about 2022, Plantiff suffered from High Risk Serious Medical Needs

10  of being an ADA with "Paraplegic Disablties", when he requested special

11  accommodation needs for an Air Mattress that was wrongfully discontinued in

12  violation under California Code of Regulations, Title 15 Section 3999.394

13  (Comprehensive [a]ccommodations Designated as permanent, do not require further

14  review or renewal but may be revised or removed by the (PCP) as indicated by the

15  Patient status".  Additionally, the Delay plantiff endured while being deprived

16  his ADA and Armstrong Rights awaiting material and equipment".  Not made

17  available during treatment was a diret violation of CDCR Title 15 Section 3999.

18  400(b)(Id.)

19      On 07/06/2022, Plantiff was intentionally deprived of his OHU-housing,

20  DME's: Air Mattress, Program Services Groups Credits Earnings, ect.., and

21  Medical Services, when plantiff  was sent from CHCF-Stockton to CSP-LAC and

22  back to CHCF-Stockton from CSP-Lancaster for his OHU-Housing and DME's: Air

23  Mattress, Trapeze Bar or Bed Side Safety Railing, program services group credits

24  earnings ect.., and Medical Services for his ADA needs and Safety after his

25  High Risk Serious Medical and ADA needs could Not Be Met at CSP-LAC.  However,

26  plantiff status remained Outpatient [OP] Level of Care (LOC) for Treat and

27  Return, even though the status caused Bedsores and plantiff  required OHU-

28  Housing on more than one occasion. (ID), thus having the knowledge that the

1   services at CSP-Lancaster were unacceptable to deal with Plantiff's High Risk

2   Serious Medical needs and ADA conditions. Defendants still, upon his return

3   was Deliberate and Indifferent delaying his ADA Services (Id.). Had defendants

4   Gavin Newsom, Kathleen Allison, Gena Jones, J. Schultz, A. Adams, M. Soleimani,

5   C. Galstain, G. Williams, A. Farhat, K. Peterson, G. Stacy, T. Hernandez, C.

6   Hohader, S. Richardson, N. Castillo, J. Kuykendall, L. Bucsit, C. Detrick, M.

7   Ureste, A. Chavez, A. LAI, G. Davis, and Does 1-20, recklessly disregarded

8   plantiff's high risk serious medical and ADA history [Before being transferred

9   to CSP-Lancaster and after returning to CHCF, staff should have been aware that

10   LAC sent him to CHCF in the beginning and after returning to CHCF-Stockton with

11   serious severe injuries of pressure sore to his testicles and legs].

12      Classification Committee and RAP Committee Defendants, G. Williams, A.

13   Farhat, K. Petersen, G. Stacy, T. Hernandez, C. Hohader, S. Richardson, N.

14   Castillo, J. Kuykendall, L. Bucsit, C. Detrick, M. Ureste, A. Chavez, A. LAI,

15   and H. Davis all ignored Plaintiff's complaints of exculpatory physical FACTS

16   AND THREATS to his wellfare and safety, well-being, prior to the wrongful

17   transfer from CHCF-Stockton to LAC-Lancaster, which caused plaintiff to suffer

18   a leg injury, i.e.., his leg was cut from the design of the bed, which was not

19   built for ADA accessibility, and because ADA Accommodation governed under CDCR

20   Title 15, Sections 3999.394and 399.400, were "Permanent", DME's was discontinued

21   in retaliatory reprisal to undermind plaintiff's high risk serious medical needs

22   and safety in violation of his ADA by Defendants, in refusing plaintiff's Air

23   Flowing Pressure Management Mattress, and a Bed with Side Rails, OHU-Housing

24   and equal access to program group services, credit earnings, ect..., and

25   Medical Services Not Accommodated to cause further excessive risk and imminent

26   harm from the complicit course of conduct under the continuing violation

27   doctoring act by the incompetence of Defendants Gavin Newsom, Kathleen Allison,

28   J. Schultz, A. Adams, M. Soleimani, C. Galstain, G. Williams, K. Petersen,

1  G. Stacy, T. Hernandez, C. Mohader, S. Richardson, N. Castillo, J. Kuykendall,

2  L. Bucsit, C. Detrick, M. Ureste, A. Chavez, A. Lai, H. Davis and Does 1-20,

3  failed to comply with The American With Disability Act.(ID.)   These

4  Discriminatory Acts to deprive plantiff of his Disabilities and his ADA and

5  Armstrong Rights and Constitutional Rights

6       From the denied services, activities, programs and benefits [fter the

7  wrongful transfer to CSP-LAC from CHCF-Stockton and the Defendants failure to

8  treat plantiff's ADA Conditions, causing him to suffer further significant

9  injury and unnecessary unwanton infliction of pain overall.  The Defendants

10  behavior constituted Deliberate Indifference [Because] each defendant

11  personally Disregarded the American with Disability Act and their personal

12  duties and responbilities when each was aware that their underlying challenged

13  decision caused plantiff further significant injury[and]The unnecessary and

14  unwanton infliction of pain, and each named defendant personally failed to

15  pursue an appropriate ADA Medical remedy.  Plantiff also grieved that each

16  defendant in their own individual and official respect, continued to violate

17  plantiff's right to adequate ADA Accommodations by violating his 1st, 8th and

18  14th Amendments, and his ADA/ARP Disability Rights (ID).  On or about May 02/22,

19  plantiff also submitted a CDCR 1824 Reasonable Accommodation Request, after his

20  Air Mattress was disontinued, arguing that he had been manipulated and robbed

21  for his personal DME's.  Plantiff mentioned that he was prone to bed sores and

22  that he could not sleep...Because[his]ADA Mattress was taken away, depriving

23  him of his ADA Rights.(Id.)  Further, each defendant personal knowledge and

24  actions was reckless disregard and have shown a pattern of ignoring, denying

25  and making a mockery out of the CDCR Grievance Process, and shown a clear

26  disregard for ADA Rights of Mr. Reed.  Each defendant knew of the potential

27  risk and imminent harm that would occur when they disregarded the PCP's prior

28  order for his DME's, and how his non-adverse transfer would adversely affect

CONTINUED CLAIM 1:SUPPORTING FACTS PAGE 3-G

1  the interest of plantiff, "But nonetheless, 'utterly failed to excercise care'

2  to avoid the harm", will support a judgment award of punitive damages for

3  relief.  Plantiff believe that he was held at CSP-Lancaster in retaliation and

4  reprisal due to his right to grieve under his 1st Amendment for over 30 Days,

5  because he was intentionally deprived of adequate appropriate housing and

6  tortured causing him to suffer injuries medically and mentally as he

7  decompensated."

8      Because the Defendant(s) Gavin Newsom, Kathleen Allison, Gena Jones, J.

9  Schultz, A. Adams, M. Soleimani, C. Galstain, G. Williams, A. Farhat, K.

10  Petersen, G. Stacy, T. Hernandez, C. Mohader, s. Richardson, N. Castillo, J.

11  Kuykendall, L. Bucsit, C. Detrick, M. Ureste, A. Chavez, A. LAI, H. Davis and

12  Does 1-20, policies and direct decisions had a discriminating effect from the

13  intentional cause to discontinue of Plantiff's DME's Air Mattress and transfer

14  to CSP-Lancaster without "Trapeze Bar" that was ordered.  "Such exclusion,

15  denial of benefits and discrimination was by reason of Plantiff's disabilities"

16  and Plantiff's rights under ADA and the Rehabilitative Act, was intentionally

17  and personally violated.  Plantiff here was "Unduly Burdened" by the defendants

18  actions and inactions of their Administrative Prison Policies not to

19  accommodate plantiff's High Risk Serious Medical needs and safety when they

20  refused to "Modify" or 'Accommodate' his disabilities".(Id.)

21      The exception would have been, if "Public Entity (CDCR/CCHCS) can

22  demonstrate that making the modifications would fundamentally alter the nature

23  of the service, program, or activity. '28 C.F.R. 35.130(b)(7)(altered)'.

24      this is not the case in this instant claim, because the Defendant(s)

25  Administrative Prison Policies at issue, based upon information and belief, was

26  not interferred with based upon plantiff accommodation request for transfer and

27  the transfer was indeed implemented when he was returned to CHCF-Stockton after

28  he was deprived and tortured for over 30 Days, providing relief to plantiff's

CONTINUED CLAIM 1; SUPPORTING FACTS PAGE 3-H

1   accommodation requests, and with respect to one or more of the issues grieved,

2   it was concluded that staff: Violated California Department of Corrections

3   and Rehabilitation (CDCR) policy."

4      "Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.4, prohibits

5   a federally funded state program from discrimination against a handicap

6   individual solely by reason of his handicap... Be denied the benefits of or

7   be subjected to discrimination under any program or activity, recieving

8   Federal Financial Assistance..." (29 U.S.C. 706(7)(B).)

9      Here, in this matter being reviewed Plantiff was "Qualified" with

10   respect to his ADA Medical Necessity, High Risk Serious Medical needs and

11   safety while and during his stay under the jurisdition of the California

12   Department of Corrections and Rehabilitation/California Correctional Health

13   Care Services at CHCF-Stockton and CSP-Lancaster until he was granted relief

14   on July 06, 2022". (Ibid). This is so, even though Plantiff's ADA Medical

15   factors had not changed today presently in which Defendants have continued

16   their retaliatory reprisal due to Plantiff's right to grieve by undermining

17   his right to earn credits for early release due to retaliation and his

18   disability to equally access program services to earn credits.

19

20

21

22

23

24

25

26

27

28

## CLAIM II

1. State the constitutional or other federal civil right that was violated: <u>Petitioner was deprived of his</u>
<u>United States Constitution First Amendment right to access the Court</u>

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

- ☐ Basic necessities
- ☐ Mail
- ☒ Access to the court
- ☐ Medical care
- ☐ Disciplinary proceedings
- ☐ Property
- ☐ Exercise of religion
- ☐ Retaliation
- ☐ Excessive force by an officer
- ☐ Threat to safety
- ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

<u>[Petitioner's] Due Process Rights under the First Amendment U.S.C.A., to access the</u>
<u>Court's when Warden Gena Jones intentionally delayed [Petitioner's] "emergency</u>
<u>complaint", (cont., see Government Claim (GC) Ex. D , p. 1 of 2 ) (altered)</u>

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

<u>"as a result of her action or inaction the Office of Grievance Decision on 08/06/2022"</u>
<u>Denied the appeal." (see G.C. Ex.  id., p. 1 of 2 )</u>

5. Administrative Remedies.

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes ☐ No

   b. Did you submit a request for administrative relief on Claim II?  ☒ Yes ☐ No

   c. Did you appeal your request for relief on Claim II to the highest level?  ☒ Yes ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## CLAIM III

1. State the constitutional or other federal civil right that was violated: <u>Each Defendant was negligent</u> <u>negligent against Petitioners</u>

2. **Claim III.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care

☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation

☐ Excessive force by an officer     ☐ Threat to safety     ☒ Other: <u>Negligence</u>

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

<u>Defendants had" (a) a legal duty to use due care; (b) they breached such legal</u>
<u>duty; [and] (c) the breach was the proximate or legal cause of the resulting</u>
<u>injuries. (cont., G.C., Ex. (D) p. 1 of 2)</u>

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
<u>Defendants are liable for Petitioners pain and suffering; intentional Infliction of</u>
<u>Emotional Distress...(cont. see G.C., Ex   p. 1 of 2)</u>

5. **Administrative Remedies.**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☒ Yes   ☐ No

   b. Did you submit a request for administrative relief on Claim III?     ☒ Yes   ☐ No

   c. Did you appeal your request for relief on Claim III to the highest level?     ☒ Yes   ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. I, Kevin Reed, seek to sue each entity and person in their individual and official capacities for what the jury think is reasonable; 2. To declare Unconstitutional violations of federal and State Law by Defendant(s) practices in denying Kevin Reed adquate and necessary medical treatment, denying him safe accessible facilities, denying him reasonable accommodations, and retaliation against him; for compensatory, general, and special damages in the amount proven at trial; 4. for treble and/or statutory damages

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____6/21/23_____                          _Kevin Reed_
                    DATE                                SIGNATURE OF PLAINTIFF

_Jamisi Jermaine Calloway_
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)
_____
_____
_____
(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

4.  Do you have cash (includes balance of checking or savings accounts)?   _X_ Yes  _No

    If "yes" state the total amount:  __$4,000.00__

5.  Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or other valuable property?                                                   __ Yes     _X_ No

    If "yes" describe the property and state its value:  _____

6.  Do you have any other assets?          __ Yes      _X_ No

    If "yes," list the asset(s) and state the value of each asset listed:  _____

7.  List all persons dependent on you for support, stating your relationship to each person listed and how much you contribute to their support.
    _N/A_
    _____
    _____

This form must be dated and signed below for the court to consider your application.

    I hereby authorize the agency having custody of me to provide a certified copy of my trust account statement for activity covering the last six months to the Court. Additionally, once eligibility is established, I further authorize the agency having custody of me to collect from my trust account and forward to the Clerk of the United States District Court payments in accordance with 28 U.S.C. § 1915(b)(2).

    __6/21/23__                              __K. Reed__
         DATE                                SIGNATURE OF APPLICANT

Applicant's CDCR Number (Mandatory for CDCR Applicants):  __AN4611__

## CERTIFICATION BELOW IS TO BE COMPLETED BY NON-CDCR INCARCERATED PRISONERS ONLY

### CERTIFICATE
(To be completed by the institution of incarceration)

I certify that the applicant named herein has the sum of $_____ on account to his/her credit at _____ (name of institution). I further certify that during the past six months the applicant's average monthly balance was $_____. I further certify that during the past six months the average monthly deposits to the applicants account was $_____.
(Please attach a certified copy of the applicant's trust account statement showing transactions for the past six months.)

_____                              _____
DATE                                         SIGNATURE OF AUTHORIZED OFFICER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



# Exhibit

# A

CHCF - California Health Care Facility - Stockton

Patient:     **REED, KEVIN JERMAINE**
DOB/Age/Sex: 9/10/1981  / 40 years    / Male         CDCR: AN4611

| *Progress Notes* |
|---|

5. Hyperlipemia
   Continue statin.  LDL was 130 back in March 21.  Repeat lipid panel in March 2022.
6. Obese
   encouraged weight loss through diet.  This has not worked.  He is on orlistat.
Unfortunately there are no recent weights recorded over the past 5 weeks.  I placed an
order to weight every week.
7. Preventative health care
   Immunizations up-to-date.  Pt was told he does not qualify for any screening tests at this
time, particularly lung CA, PSA and colon ca.
8. Heartburn
   Likely related to GERD.  Encouraged lifestyle modification and to continue omeprazole.
Discussed with pt to take this on an empty stomach in the AM and wait 30 min after taking
it to eat.  These measures have worked for him.
9. Back Pain:
   He is on tylenol and ibuprofen.  Explained to him it is muscle pains and he should try to
avoid staying in bed for long periods of time if possible.  He has been referred to PT. given
the severity of the spasms I have written for a muscle relaxant Flexeril 10 mg twice a day
as needed.  I informed him there is no need for further imaging or testing.  He is pending
physical therapy at this time.  Also informed him that weight loss would be helpful.  His
abdominal pain is secondary to muscle spasms as well.  He has had this pain since he has
been a paraplegic he tells me.  It is likely neuropathic versus musculoskeletal.  Regardless
Flexeril did seem to help and we can continue flexeril at current dose.

Pt needs OHU for DME equipment not available in OP.

All problems listed above were discussed with inmate/patient, including results of recent
labs and imaging as well as any further diagnostic work up or treatment plan needed.  In
addition, preventative measures for the patient's chronic diseases were discussed.
Pt was able to verbalize his complete understanding of the above.
Communication was done using basic language, speaking slowly and clearly.
All pertinent questions the patient had were addressed.
The entire encounter including physical exam was completed in the presence of the
medical assistant.
Interview was conducted in privacy to ensure HIPAA compliance.
Pt is full code. [2]

Current Occasional, 3-4 times per week,
   Withdrawal Symptoms Present No.
Never
Employment/School
Previous employment/school: music
entertainer.
Exercise
Exercise frequency: 1-2 times/week. Exercise
   type: Walking.
Substance Abuse
Current Daily, Marijuana, Methamphetamines,
   Prescription medications, Daily, IV drug use:
   No.
Former, Marijuana
Tobacco
Former

**Family History**
   ADHD - Attention deficit disorder with
   hyperactivity: Daughter and Sibling.
   Diabetes mellitus: Father.

**Immunizations**

| Event Name | Event Result | Date/Time |
|---|---|---|
| hepatitis A-hepatitis B vaccine | 1 mL | 02/10/21 13:23:00 |
| hepatitis A-hepatitis B vaccine | 1 mL | 09/14/20 10:55:00 |
| hepatitis A-hepatitis B vaccine | 1 mL | 08/14/20 12:44:00 |
| hepatitis B adult vaccine | 20 mcg | 04/06/20 11:58:00 |
| hepatitis B adult vaccine | 20 mcg | 03/05/20 19:52:00 |
| SARS-CoV-2 (COVID-19) mRNA BNT-162b2 vax | 30 mcg | 11/10/21 12:35:00 |
| SARS-CoV-2 (COVID-19) mRNA BNT-162b2 vax | 30 mcg | 01/25/21 12:43:00 |
| SARS-CoV-2 (COVID-19) mRNA BNT-162b2 vax | 30 mcg | 01/04/21 12:19:00 |

---

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# Exhibit

# B

17
18

Inmate/Parolee Appeal, CDCR

Log# CMF-M-16-02852

19

___ Pages

20
21
22
23
24
25
26



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# AUDITOR ACTION

| Inmate Name: REED, KEVIN J. | Date: 05/12/2⌐ | |
|---|---|---|
| CDC#: AN4611 | Security Level: Leve¹ | · CHCF-Facility C |

**Audit Type:** Transfer Endorsement (between Institutions)    Aud·

**Administrative Determinants:**

Sex Offender (Affixed)
Violent History Noted (Affixed)

*This is CHCF File of Grievances*

Transfer Endorsement

○ Life Prisoner        BPH Hearing Date:

Enemy Concerns

◉ Offender Separation Noted ○ No Comment
○ Offender Separation Clear
□ Enemy at Receiving Institution

□ SNY

"R" Suffix Issues                    Other Case Factors

◉ "R" Suffix Noted ○ "R" S

⌐ex □ Arson □ Computer

Close Custody

○ Close ◉ N/A

*This is the people who put me up for transfer But H. Davis sent me to Lancaster*

Single Cell Rx

□ Endorsement is based on
□ Hardship □ Re-direct Tx

ns have been addressed
is recinded

MHSDS Issues                         ssues

○ CCCMS ○ Remove from ⋈
Date: 02/25/2019
○ EOP ◉ No MHSDS Needs

□ Madrid Clearance
Date:

○ Restricted - Cocci Area 1
◉ Restricted - Cocci Area 2
○ N/A

 CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# CLASSIFICATION COMMITTEE CHRONO

| Inmate Name: REED, KEVIN J. | Date: 05/09/2022 |
| CDC#: AN4611 | Date of Birth: 09/10/1981 |
| Control Date: 07/31/2025 | Control Date Type: Earliest Possible Release Date |

| Hearing Date: 05/02/2022 | Hearing Type: Transfer; Other (See Committee Action Comments) |
| Committee Type: Institution Cls. Committee (UCC) | Correctional Counselor: M. Ureste |

**STATIC CASE FACTORS**

**CRITICAL CASE FACTORS**

## CLINICIAN COMMENTS

## COMMITTEE ACTION SUMMARY

TRANSFER REVIEW:  REFER TO CSR RX NON-ADVERSE TX TO LAC IV 270 W/ ALT OF SVSP IV 270, CONT. MED A CUSTODY, WG/PG A1/A, DPP: DPW, DDP: NCF, CPP PENDING TRANSFER, LVL IV (96 PTS), DOUBLE CELL AND DORM APPROVED, EPRD: 7/31/2025, MH: GP, RGPL: 6.2

## COMMITTEE COMMENTS

Inmate REED AN4611 appeared and participated in the Unit Classification Committee (UCC) at the California Health Care Facility (CHCF) Facility C on this date for a Transfer Review. Subject received a Notice of Classification Hearing 72-hour notification per the Notice of Classification Hearing, which can be located in Subject's ERMS file.  Prior to committee reviewing and discussing the case, Subject was introduced to the committee members.

-Subject is not a participant in the MHSDS, GP LOC, and has a DPP code of DPW.
-DDP code is NCF.
-Subject has a TABE score of 6.2
-A Staff Assistant is not required.

Subject arrived to CHCF for Specialized/Higher Level of Care Placement (OHU Medical Permanent Placement) on 5/16/2018 per HCPOP endorsement dated 5/14/2018.  Committee reviewed case factors related to change in Medical Level of Care based on Patient Need from OHU to OP per Medical Classification Chrono dated 4/27/2022. Due to the change, Subject no longer meets the criteria for CHCF-OHU housing and should be considered for a non-adverse transfer.

Subject is aware of CHCF's new mission as a programming facility (PF). Subject understands CHCF-PF will not distinguish between GP and SNY inmates and its primary mission is to provide medical and mental health services to inmate-patients safely, securely and cost effectively, with dignity and without delay. Subject stated that he will be able to program safely at CHCF.

HOUSING REVIEW: Subject's housing assignment has been reviewed by committee in accordance with California Code of Regulations (CCR) Title 15, specifically section 3269 Inmate Housing Assignments. Subject does not have a history of in-cell assaultive, abusive, or predatory behavior towards cellmates.  Previous Single Cell status was based on medical need.  Per updated MCC dated 4/27/2022, Single Cell status is not noted.  Subject is double cell approved and dorm eligible.

CLOSE CUSTODY REVIEW: Subject does not meet Close Custody criteria

SNY STATUS: UCC notes Subject DOES NOT have SNY concerns.

PREA REVIEW: As part of Subject's TRANSFER REVIEW, the inmate participated in the completion of the PREA Screening tool at CHCF, which included a review of all available documentation in SOMS and ERMS and a face to face interview. During the UCC, the chairperson reviewed the completed PREA Screening tool with Subject and asked the inmate if they had any additional relevant information that should be considered for future housing and/or program/work assignments. Subject has no additional information to provide and feels the current housing assignment is appropriate at this time.

180/270 REVIEW: Subject meets criteria for Level IV 270 DESIGN.

TRANSFER REVIEW: Subject was informed of the institutions that he was eligible to transfer based on his case factors. Subject stated his preference is CMF with an alt of RJD.  Committee elects to refer case to CSR for transfer recommendation of LAC IV 270 w/ alt of SVSP IV 270.

NOTE:  UCC notes the recommendation of SVSP IV 270 would require a medical override due to Subject's medical risk level: High Risk. UCC notes medical risk level is a preference, not an absolute.  This recommendation is due the lack of 270 institutions which can accommodate DPW.

-Per  MCC dated 4/27/2022:  OP, Infrequent Basic Consultation, Limited Duty, High Risk, Low Intensity Nursing, Physical Therapy, Durable Medical

Equipment, Requires Electrical Access, Restricted Cocci Area 2 and comments note:  waist chains in prison, self-propelled manual wheelchair, wheelchair gloves; Barrier free/wheelchair access. Pt is independent on mainline provided he is housed in a DPW with supportive bar to assist in transfer from WC to low bunk or a trapeze. Pt as of now is off heat meds (subject to change, please confirm - 8/16/2019)
-Upon transfer to receiving facility, custody level shall remain MED A custody and WG/PG A1/A.
-Subject's housing restrictions are Barrier Free/Wheelchair Accessible, Ground Floor-No Stairs, Lower/Bottom Bunk Only.
-Subject's Confidential/Non-Confidential Offender Alerts and Notification in Case of Inmate Death, Serious Injury, or Serious Illness have been updated.
-Continue the Subject's present program pending transfer.

EFFECTIVE COMMUNICATION: Effective communication was established with the use of simple English, spoken, slowly, loudly, and clearly. The Subject restated his understanding of the proceedings to the committee in his own words. The Subject asked appropriate questions and provided appropriate, substantive response to questions asked. Committee was satisfied the Subject understood the committees' actions and that effective communication was occurring.

Subject actively participated in committee action and stated he understood and agreed with the committee's recommendations. He was advised of his right to appeal committee action per 3084.1.

### COMMITTEE MEMBERS

| Staff Name | Chairman | Recorder | Title |
|---|---|---|---|
| H. Gutierrez | | | CCI |
| J. Rubalcava | | | CCI |
| M. Ureste | | X | CCI |
| A. Chavez | X | | FC(A) |

### RECORDER

| | |
|---|---|
| M. Ureste | 05/09/2022 |
| | Date |

### CHAIRPERSON

| | |
|---|---|
| A. Chavez | 05/09/2022 |
| | Date |

CDCR SOMS ICCT162 - Classification Committee Chrono

| DPP Issues | | | | Transport Precaution Code |
|---|---|---|---|---|
| ☑ DPW (Wheelchair) | ☐ DPM (Mobility) | ☐ DPV (Vision) | ☐ DPH (Hearing) | ☐ 92 |
| ☐ DPS (Speech) | | | | |
| ☐ DPO (Other) ☐ DNM ☐ DNV ☐ DNH ☐ DNS | | | | |
| ☐ DLT ☐ DKD | | | | |

| DDP Issues | Detainers | | |
|---|---|---|---|
| ⦿ NCF ☐ NDD ☐ DD1 ☐ DD2 ☐ DD3 ☐ N/A | ☐ ICE Potential | | |
| Date: 02/13/2013 | ☐ Other Potential | ☐ ICE Active | ☐ Felony |
| | | ☐ Other Active | ☐ Misdemeanor |

**Confidential Folder**

☐ Clear ⦿ Information Noted ☐ No Comment

**Miscellaneous Issues/Comments**

☐ This is a Retention      ☐ Retain ASU (180 days) pending Transfer
☐ Transfer upon MERD expiration      ☐ Case conferenced with a CSU Manager

| Institution Approved: | California State Prison, Los Angeles County | Program: | LAC-IV(270) |
|---|---|---|---|
| | | Override Reason: | ZZZ-None |

This transfer approval expires on 11/08/2022 and will require return to Auditor for re-authorization.

**Comments:**

Endorsed
-Case was
availability

-CWRS of

-No prior

Casework

-Staff need

-Staff need
include all

-Staff need

*This the person who sent me to Lancaster without Reading this ~~Cool~~ File regarding my need for Trapeze bar and or safety railings*

...dinator. Placement based on institutional

...o be addressed.

...3 back to the author as it needs to
...er CCR Section 3321.

...ion. This RVR has been adjudicated.

**AUDITOR**

H. Davis



|  | CSR | 05/12/2022 |
|---|---|---|
| Name: | Title | Date |

CDCR SOMS ICCT164 - Auditor Action

Exhibit

C

LAC - California State Prison, Los Angeles County

Patient:  **REED, KEVIN JERMAINE**
DOB/Age/Sex: 9/10/1981  / 40 years   / Male          CDCR: AN4611

| *Consultation Notes* |
|---|

per custody.

Patient otherwise denies fever, chills, chest pain, shortness of breath, abdominal pain, nausea, vomiting, changes in urinary or bowel habits.
1. Paraplegia following spinal cord injury
 History of T6 paraplegia s/p gunshot wound 2010 with urinary incontinence. He uses a condom cath for urination.

2. Left scrotal pressure ulcer, stage 2
 Will place consult to Wound care
Follow up RN line daily for wound care.

 Patient currently housed in General Population. Will place order for Gel mattress.
For Group 2 pressure reducing support surface patient will likely need CTC or OHU.
Spoke to CME Dr. Soleimani regarding placement. Currently no CTC bed available at LAC at this time. We will attempt OHU placement. Should CTC bed become available sooner, will transfer to CTC.

Wound care team note reviewed from 3/10/2022
40-year-old male currently residing at CHCF presents to telemedicine clinic for initial consultation with CCHCS wound team regarding recent left buttocks wound. Patient unsure of how it happened.  States about a month ago noticed open wound, was getting daily dressing changes for several weeks.  States today that about a week ago wound healed completely and dressings were discontinued..  Patient previously known to our clinic for lower leg wounds.  Healed and signed off to PCP in October 2019.  Patient has Roho cushion for wheelchair which is functioning properly per his report and on low-air-loss mattress.  Frequently changes positions.  No other complaints today.
1. Pressure ulcer of left buttock, stage 2
 Healed, will sign off care back to PCP at this time, appreciate consult, will be available for re-consult per clinical indication, R/B/A to pt with clear instructions and warnings about alarm s/s - pt consented to plan of care and assured compliance with it
This was a Telemed encounter. The exam was done with the assistance of RN Suson. Voice recognition software was utilized in the creation of this note.

Chart review from 6/23/2022
System Assessment
Orientation Assessment. :  Oriented x 4
Cardiovascular Signs/Symptoms. :  None
Capillary Refill. :  Less than 2 seconds
Left Dorsals Pedis Pulse :  Palpable with good volume
Right Dorsals Pedis Pulse :  Palpable with good volume
Acuna, Teofilovill RN - 6/23/2022 9:41 PDT
Braden Scale Inclusion Assessment
Braden Scale Inclusion Criteria :  Wound/ ulcer present
Acuna, Teofilovill RN - 6/23/2022 9:41 PDT
#1 to #7: Wound/Ulcer/Injury Assessment

Previous employment/school: music entertainer.
Exercise
Exercise frequency: 1-2 times/week. Exercise type: Walking.
Substance Abuse
Current Daily, Marijuana, Methamphetamines, Prescription medications, Daily, IV drug use: No.
Former, Marijuana
Tobacco
Former

**Family History**
 ADHD - Attention deficit disorder with hyperactivity: Daughter and Sibling.
 Diabetes mellitus: Father.

**Immunizations**

| Event Name | Event Result | Date/Time |
|---|---|---|
| hepatitis A-hepatitis B vaccine | 1 mL | 02/10/21 13:23:00 |
| hepatitis A-hepatitis B vaccine | 1 mL | 09/14/20 10:55:00 |
| hepatitis A-hepatitis B vaccine | 1 mL | 08/14/20 12:44:00 |
| hepatitis B adult vaccine | 20 mcg | 04/06/20 11:58:00 |
| hepatitis B adult vaccine | 20 mcg | 03/05/20 19:52:00 |
| SARS-CoV-2 (COVID-19) mRNA BNT-162b2 vax | 30 mcg | 11/10/21 12:35:00 |
| SARS-CoV-2 (COVID-19) mRNA BNT-162b2 vax | 30 mcg | 01/25/21 12:43:00 |
| SARS-CoV-2 (COVID-19) mRNA BNT-162b2 vax | 30 mcg | 01/04/21 12:19:00 |

**Lab Results**
Labs reviewed from 4/20/2022 and A1c 6.3%

---

Report Request ID:   58421836                              Print Date/Time:  8/3/2022 10:27 PDT

WARNING: This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

Patient:   **REED, KEVIN JERMAINE**
DOB/Age/Sex:   9/10/1981   / 40 years   / Male          CDCR: AN4611

| *Consultation Notes* |
|---|

Patient refuses exam of his scrotal area today reports that he was not able to shower and his underwear is soiled.  Reviewed wound care nursing documentation/ measurements from 6/23/2022

**Diagnostic Results**
No recent pertinent

**Assessment/Plan**
1. Left scrotal pressure ulcer, stage 2
   Patient reports his scrotal wound is improving- he is receiving daily dressing changes which should be continued.
   Patient understands the importance of adequate offloading-advised to continue.
   Recommend IP be in CTC/OHU environment where he can receive all of the appropriate DME and care for someone with paraplegia.
   Per communication on 6/24/2022 with PCP a request for OHU has been placed for the patient approximately 1 month ago- per PCP there are no beds available at previous facility/OHU- and until there is - patient is at LAC-appreciate PCP assistance
   Currently no alarm s/s- R/B/A with clear instructions and warnings to pt about potential consequences of any non-compliance with care.
   Nursing and PCP help appreciated with ensuring compliance- will continue to monitor closely to prevent regression- patient advised to complete 7362 if any alarm s/s-
   f/u 14 days in our clinic via telemedicine
   This was a Telemed encounter. The exam was done with the assistance of RN Chu. Voice recognition software was utilized in the creation of this note.
2. Open wound of left thigh
   as above-wound care orders updated today to include the area on the left thigh.
3. Paraplegia following spinal cord injury
   as above
Orders:
Follow Up Wound Care 40
Wound Care Routine

**Encounter Info:** Patient Name: KEVIN REED,DOB: 09/10/1981,CDCR: AN4611,FIN: 10000002911956658AN4611,Facility: LAC,Encounter Type: Institutional Encounter

Electronically Signed on 07/01/2022 12:13 PM PDT

_____

Stout, Benton PA, PA

Modified by: Stout, Benton PA, PA on 07/01/2022 12:13 PM PDT

Report Request ID:    58421834                          Print Date/Time:   8/3/2022 10:27 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

*This is my 5th one and I have never seen anyone Ducated but not called out*

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**HEALTH CARE SERVICES REQUEST FORM**
CDCR **7362** (Rev. 03/19)

Page 2 of 2

| PART I:  TO BE COMPLETED BY THE PATIENT |
|---|
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. |

REQUEST FOR:     MEDICAL ☑     MENTAL HEALTH ☐     DENTAL ☐     MEDICATION REFILL ☐

| NAME Reai K | CDCR NUMBER AN4611 | HOUSING B-1-cell #126 |
|---|---|---|
| PATIENT SIGNATURE ~Rc~ | | DATE 05-23-22 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe your health problem and how long you have had the problem) I am a complete paraplegic with a T-6 spinal cord injury I have what to be a stage one pressure ulcer forming on my genitals I also cant elevate my feet because the locker is at the foot of my bed and I have blood clots in my legs I also cant use my sleep apnea machine because theres no table to sit it on or eat on or write on there is no Air mattress in my cell or ADA Mattress and I have a order for a Trapeze bar dated 04-14-2 *I still have not recie it Plea look into s matte thank you*

NOTE:  IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF CALIFORNIA
**HEALTH CARE SERVICES REQUEST FORM**
DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 7362 (Rev. 03/19)
Page 2 of 2

| PART I:  TO BE COMPLETED BY THE PATIENT | | | |
|---|---|---|---|
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. | | | |

REQUEST FOR:     MEDICAL ☑     MENTAL HEALTH ☐     DENTAL ☐     MEDICATION REFILL ☐

NAME  *Kevin Reed*

CDCR NUMBER  *AN4611*

HOUSING  *C2A-151*

PATIENT SIGNATURE  *Kevin Reed*

DATE  *6-27-22*

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe your health problem and how long you have had the problem)  *Please look into this matter. I am a paraplegic I have a Doctor order for a Trapeze on 04-14-22 I am requesting help myself from side to side because I cont own. I fell ~~try~~ out the bed trying and hurt myse* ~~sore~~

NOTE:  IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Exhibit D

STATE OF CALIFORNIA
**GOVERNMENT CLAIM**
DGS ORIM 006 (Rev. 08/19)

DEPARTMENT OF GENERAL SERVICES
OFFICE OF RISK AND INSURANCE MANAGEMENT

### CLAIMANT INFORMATION

| LAST NAME | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| REED | KEVIN | J. |

| INMATE OR PATIENT IDENTIFICATION NUMBER (if applicable) | BUSINESS NAME(if applicable) | |
|---|---|---|
| AN4611 | | |

| TELEPHONE NUMBER | EMAIL ADDRESS | |
|---|---|---|
| | | |

| MAILING ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| C.H.C.Fac., P.O. Box 213040 | Stockton | CA. | 95213 |

IS THE CLAIMANT UNDER 18 YEARS OF AGE?
☐ Yes   ☒ No

INSURED NAME(Insurance Company Subrogation)

IS THIS AN AMENDMENT TO A PREVIOUSLY EXISTING CLAIM?
☐ Yes   ☒ No

| | EXISTING CLAIM NUMBER (if applicable) | EXISTING CLAIMANT NAME(if applicable) |
|---|---|---|

### ATTORNEY OR REPRESENTATIVE INFORMATION

| LAST NAME | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| Pro Per | | |

| TELEPHONE NUMBER | EMAIL ADDRESS | |
|---|---|---|

| MAILING ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|

### CLAIM INFORMATION

STATE AGENCIES OR EMPLOYEES AGAINST WHOM THE CLAIM IS FILED California Dep't of Corr. & Re hab.(CDCR): Reasonable Accommodation Panel(RAP) Staff; __ Farhat, M.D., Drs. & Nurses John and Jane Does

DATE OF INCIDENT on or about: April 14, 2022

LATE CLAIM EXPLANATION (Required, if incident was more than six months ago)

| DOLLAR AMOUNT OF CLAIM | CIVIL CASE TYPE(Required, if amount is more than $10,000) |
|---|---|
| $3,500,000. | ☐ Limited ($25,000 or less)   ☒ Non-Limited (over $25,000) |

DOLLAR AMOUNT EXPLANATION Compensatory damages (General), pain and suffering; Future damages; and Punitive damages as proven.

INCIDENT LOCATION CALIFORNIA HEALTH CARE FACILITY, STOCKTON, CALIFORNIA; and CALIFORNIA STATE PRISON LOS ANGELES COUNTY, LANCASTER, CALIFORNIA

SPECIFIC DAMAGE OR INJURY DESCRIPTION Claimant suffered from Stage II Decubitus (pressure sores) ulcers to Left testicle, and to legs, with pain and suffering; falls from prison beds causing injuries to head, torso and legs, with pain and suffering; formation of blood clots in legs; and suffering from lack of use of sleep apnea machine by CDCR's failure to provide a reasonable stand for it.

CIRCUMSTANCES THAT LED TO DAMAGE OR INJURY Claimant alleges that he is an individual with disabilities. (See Exhibits A through E.) Specifically, Claimant is "paraplegic" (Ex. A. Assessment Plan, at 1.) he is otherwise qualified to participate in or receive the benefit of California Department of Correction's services, programs or activities. (CDCR); He was excluded in and/or denied the benefits of CDCR's

EXPLAIN WHY YOU BELIEVE THE STATE IS RESPONSIBLE FOR THE DAMAGE OR INJURY
Claimant is in the custody of C.D.C.R. whom have a "Special relationship" with him and are "obligated" under "duty" to provide him Constitutional medical care, under the Americans with disabilities Act; U.S.C.A 8th Amendment; and Civ. C. § 1714.

member in their "Individual Capacity" as "Supervisors" are liable under 42 U.S.C. § 1983 for their employees/subordinates actions or inactions in "direct[ing]" the violations for the purpose of implementing "prison Policy." (Id.)(altered), including each John and Jane Doe Nurses. (Id.)

Further, Claimant's Due Process rights under the First Amendment U.S.C.A., to access the courts when Warden Gena Jones intentionally delayed Claimant's "emergency complaint" regarding him "being held at LAC prison without adequate appropriate [medical care]," which was "redirected"[2] and subsequently became "overdue," for a response. (Ex. C., pp. 1 of 2.) As a result of her action or inaction the Office Of grievances Decision on "08/06/2022" Denied the appeal. (Id.)(See Ex. D. Same, "held at LAC prison without adequate care for over 30 days which caused me to suffer injuries and to medically/mentally Decompensate.")

Moreover, the "override" transfer to LAC was based on a improper assessment of Claimant's "case factors" (medical), and on "05/02/22" the "transfer committee's" recommendations to transfer was "audited by Classification Staff Representative H. Davis, and Claimant was endorsed to [LAC]." (Ex. D. Attached Office Of Grievance Decision (OOGD), dated 08/17/2022, Section III.) This transfer Decision was authorized because Claimant's medical level of care was reduced to "Outpatient" (OP) from "Outpatient Housing Unit"(OHU) in violation of his serious medical needs. (Ex. D. Section III., id.)  The Classification Committee was responsible for Claimant receiving "acceptable" medical care, and its decisions to transfer Claimant beginning from "4/27/2022" ("Patient need from OHU to OP")(Ex. F. Attached Classification Committee Chrono, dated 05/09/2022, pp. 1 of 2, "NOTE"("Per MCC[3] dated 4/27/2022: OP...., Pt. is independent on mainline provided he is housed in a DPW[4] with supportive bar to assist in transfer from WC to low bunk or trapeze....").) As previously mentioned, the "Override" [] rendered inadequate [medical] services and Claimant suffered [from] 'unavailable medical care.'" (Id.) (Altered). As such, the "override" approved by H. Davis was also based on the same "administrative policy" above mentioned. This supervisory action or inaction by H. Davis, and the "transfer committee" who acquiesced to the improper assessment of Claimant's case factor was was in violation  of the A.D.A., and cruel and unusaual punishment in violation of the 8th Amendment, U.S.C.A.

Upon being received at LAC, Claimant informed Dr._____ _____, that his bunk was designed with a lip on the side panels of the bunk to prevent a mattress from sliding off of  the bed. Claimant was injured by the steel lip which pressed up and into his left thigh causing a cut to form and cause great pain and suffering. (Ex. A. # LAC SC 22000052, Consultation Notes, dated: "07/01/2022" ¶: 2.) The administrative level found that a violation of CDCR "policy" had occured. (Id.), in # LAC 22000846, "No Intervention" was decided. (Ex. A. dated "Jul 19 2022"). In # 22000052, Claimant argued that he had "no ADA mattress...." "no trapeze in my cell which was ordered by [Dr.] [F]arhat at CHCF on 04/14/22." (Id.)(Altered), and that to compensate LAC has

member in their "individual Capacity" as "Supervisors" are liable
under § 1983 for their employees/subordinate's actions for also
"direct[ing]" the violations for the purpose of implementing the
"prison policy." (Id.); and each John and Jane Doe Nurses. (Id.)

Each Defendant was further Negligent against Claimant, whereas:

   Defendants had "(a) a legal duty to use due care; (b) they
   breached such legal duty; [and] (c) the breach was the
   proximate or legal cause of the resulting injuries.

   Defendants was also negligent against Claimant by virtue
   of the "Special Relationship" of him being incarcerated
   in the custody of C.D.C.R.

(See Doe v. United States Youth Soccer Assn., Inc. (2017) 8 Cal.
App. 5th,1118, 1128; 214 C.R. 3d 552.)(Elements of negligence.)

In Conclusion, Claimant is in compliance with the Goærnment
Claims Act, having brought this claim no more than "Six months"
after the accrual of the action. (Cal. Gov't. Code §§ 905.2,
910., 911.2, 945.4, 950 950.2.) (State v. Superior Court of Kings
County (Bodde), 32 Cal. 4th 1234, 1239 (Ca. 2004).)

Each Defendant is liable for Claimant's suffering of Intentional
Infliction Of Emotional Distress:
1. The Defendant's conduct was outrageous, 2. That Defendant's
intended to cause Claimant emotional distress, 2. That Claimant
suffered severe emotional distress, and 4. That Defendant's con-
duct was asubstantial factor causing Claimant's injury. (Ex. B,C,D,E.)

Dated: September    , 2022          Respectfully submitted,


                                    KEVIN J. REED
                                    Claimant


Notes:
1. Overhead Trapeze

Defendants cont.

1 through 15, Associate Warden ___ Weinholdt, M.Soleimani, M.D.
(Chief Medical Executive:California State Prison L.A. County;
G. Hernandez, O.D.(Reviewing Authority), Warden, Gena Jones;
Kathleen Allison

Damages Or Injuries cont.
Claimant further suffers the Intentional Infliction of Emotional
Distress and humiliation from the overall ordeal of falling from
his bed, and fear thereof, bed sores, pain and suffering, and
deprivation of sleep.
Circumstances cont.

services, and such exclusions, denial of benefits, or discrimin-
ation was by reason of his disability.

Claimant is a disabled incarcerated inmate whos major life act-
ivity is substantially limited due to his condition as a para-
plegic who can only mobilate via a wheelchair, in which he also
requires Durable Medical Equipment (DME) because he "needs to
be in CTC/OHU environment where he can receive all of the approp-
riate DME and care for someone with paraplegia." (Id.) Claimant
also denied DME's, i.e., access to ['sleep apnea machine'] "air
mattress" or 'ADA mattress" and "trapeze"[1](Ex. A. Health Care
Grievance 22000052)(after being sent from Cal. Health Care Facil-
ity to, Cal. State Prison, Los Angeles County (LAC) Claimant was
denied all DME's in violation of the law.) Officials at CHCF knew
or should have known that Claimant required "side bed railings"
"adaptive equipment"i.e, "trapeze bars" [portable oxygen equip-
ment;  "electrical access" and "air mattress" which are "Speci-
fied Medical Classification factors", cited in the California
Dep't of Corrections and Rehabilitation California Correctional
Health Care Services Operations Manual, pp. 10 of 11, §§(e)(Spec-
ialized Services; 11 of 11 (g)(Comments)(1)(Specified Medical
Classification factors, if present, require supporting details to
be written into the "Comments" section of the MCC...." (CCHCS)

On the basis that an "Override" was necessary under CCHCS, ch. 1,
art. 2, subd. (a)(4), Claimant was transferred to LAC, and upon
reception was denied the medical services above stated, in cons-
cious disregard to his "serious medical needs" provided under CCR
Title 15, § 3999.200(a)("Medical Necessity"), and because it was
"obvious" to Claimant a "layman" or "supported by medical evidence
like a physician's diagnosis" a "deliberate indifference" violation
has occurred. (Shipp v. Murphy:: April 14, 2021, 9 F.4th 694, * 12)
(citing Moore v. Jackson, 123 F.3d 1082 (8th Cir. 1997)(actions are
"obvious").) The "override" only rendered inadequate services and
Claimant suffered "unavailable medical care" to such an extent that
after 30 days he had to be returned to CHCF BECAUSE OF HIS WORSENED
MEDICAL CONDITION. (Ex's. B. (REASONABLE ACCOMMODATION REQUEST), Log
# 220000737)(explaining further ADA, 8th Amendment, and Negligence
violations to Claimant's serious medical needs.)) The Chief Medical
Executive at CHCF on, 7/18/22, upon acknowledging that Claimant re
turned to ["C.H.C.F."] on "july 6, 2022" received the DME "air mat
tress" promptly on "july 11, 2022." (Ex. A, I.L.R. at p. 2 of 2)
(Attached I.L.R., dated: "Jun 30, 2022" acquiesce to liability for
"staff misconduct" re:"With respect to one or more of the issues

grieved, it has been concluded that staff:

"violated California Department of Corrections and Rehabilitation policy.") Upon return to C.H.C.F., the violations continued. (Ex.E.)

"Title II of the ADA applies to prisons and incarcerated persons." (Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1988). "However, the proper defendant in a Title II claim is the public entity responsible for the alledged discrimination. (United States v . Georgia, 546 U.S. 151, 153 54 (2006).

Claimant thus sues C.D.C.R. in its official capacity, for violat ions of 42 U.S.C.,§§ 12121-33, having acted "Under Color of Law."

In Wagner v. Fair Acres Geriatic  Ctr.::Sept. 14, 1994; 49 F.3d 1002, 1008 09, the court stated:

> Section 504 of the Rehabilitation Act of 1973, 29
> U.S.C § 4, prohibits a federally funded state pro-
> gram from discriminating against a handicap indi-
> vidual solely by reason of his handicap....be de-
> nied the benefits of or be subjected to discrimin-
> ation under any program or activity receiving Feder
> al financial assistance...." (29 U.S.C. § 706(7)(B).

Here, Claimant was "qualified" with respect to his medical necess ity, serious medical needs while and during his stay at LAC, and when he returned to CHCF on "July 6, 2022". (Ibid.) This is so, even though Claimants ADA medical factors had not changed, his "transfer committee was audited by Classification Staff Repre sentative H. Davis, endorsing Claimant to "California State Prison Los Angeles." (Ex. D. Claim #: 002, subd. III.)(CSR).)

Claimant argued that the "transfer committee" "ignored" his "explanations of his health and well being..." (Id.) Claimant presented evidence that his "serious medical needs" were being "deliberately" ignored due to a mandate by CCHCS headquarters, instructing all CDCR Primary Care Providers (PCP) to change the level of Care (LOC) "for patients from CTC/OHU to OP as much as possible because CDCR was/is in urgent need of CTC/OHU beds for patients being returned from the end or closure of Medical Parole." (Ex. E. cdcr 602 1 Grievance).  In other words CCHCS was putting one class of inmate rights, over that of the other. Courts have held that: "The blanket, categorical denial" of medical treatment' solely on the basis  of an administrative policy...is the paradigm of deliberate indifference." (Howard v. Cox::September 30, 2021; 2021 U.S. Dist. LEXIS 188270, * 24 n 117)(Citations)(" [I]n [] 42 U.S.C. § 1983 action alleging Eighth Amendment violation....a reasonable jury could find that prison officials denied treatment because the inmate's medical needs conflicted with a prison policy not because non treatment was was a medically acceptable option.") (summary judgement reversed, id.) Thus, the transfer was "was an excessive risk to [Claimant's] safety," on the basis of "prison policy." (Id.); nor was it penologically justified.

Here, each medical doctor who "personally participated" in the de cision to transfer Claimant, as well as each Classification Committee